UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MATTHEW THOMAS ANDERSON, DECEASED, THROUGH HIS PERSONAL REPRESENTATIVE AND SUCCESSOR IN INTEREST, MINEKO SWEZEY; and MINEKO SWEZEY, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SISKIYOU, a public entity; SISKIYOU COUNTY SHERIFF'S DEPARTMENT, a public entity; SISKIYOU COUNTY SHERIFF RICK RIGGENS, in his individual capacity and official capacities; CAPTAIN JAMES BETT, individually; DEPUTY CHRISTOPHER MILLER, individually, RONALD BORTMAN, M.D., individually; STATE OF CALIFORNIA, a public entity; NAPA COUNTY STATE HOSPITAL, a public entity; DR. ED FOULK, R.N., individually; DANA WHITE, R.N., individually; and DOES 1 through 10, Jointly and Severally,<br><br>Defendants. | Case No:  C 10-01428 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket 13 |

The action arises from the death of Matthew Thomas Anderson ("Anderson") who committed suicide while in custody at the Siskiyou County Jail on April 9, 2009. Anderson's mother, Mineko Swezey ("Swezey" or "Plaintiff"), brings the instant wrongful death action in her individual capacity, as well as Anderson's successor-in-interest, against various defendants, including the County of Siskiyou, its Sheriff's Department and various deputies (collectively, "County Defendants" or "Defendants"). The Complaint alleges claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, among other claims. The parties are presently before the Court on the County Defendants' Motion to Dismiss. Docket 13. Having read and considered the

papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion in part, and DENIES it in part, for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  <u>See</u> Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

### A.   FACTUAL SUMMARY

At the time of his death, Anderson was a 27 year-old college student (born February 25, 1980) who had been diagnosed as having bipolar disorder and schizophrenia.  Compl. ¶ 15.  On July 15, 2008, Anderson was in front of a Jack-in-the-Box restaurant in Siskiyou, California, and began manifesting signs of his mental illness by engaging in "bizarre" and "delusional" behavior.  <u>Id.</u> ¶ 16.  Officers from the Siskiyou County Sheriff's Department ("Sheriff's Department") appeared at the scene and shot Anderson with a taser, and then placed him in a four-point restraint.  <u>Id.</u>  Anderson was then transported to the emergency room at Airchild Medical Center.  He thereafter was released to the custody of the Sheriff's Department and charged with obstruction of a business and assault on law enforcement officers.  <u>Id.</u>

Anderson was booked into the Siskiyou County Jail.  <u>Id.</u>  He was not allowed access to his medications, even though he was noted as being "delusional and a possible danger to himself."  <u>Id.</u>  On July 27, 2008, Anderson's condition worsened and he became suicidal.  <u>Id.</u> ¶ 17.  On September 11, 2008, Anderson was transferred to Napa State Hospital for mental health care treatment.  <u>Id.</u>  After his condition stabilized and his condition improved, Anderson was returned to Siskiyou County Jail on February 25, 2009.  <u>Id.</u>

On March 29, 2009, the Siskiyou County Superior Court judge presiding over Anderson's criminal case found him mentally incompetent to stand trial.  <u>Id.</u>  The judge ordered the Sheriff's Department to transport Anderson back to Napa State Hospital by no later than April 3, 2009, for care and treatment.  <u>Id.</u>  Despite having received notice of the court's ruling, officials at Napa State Hospital refused to honor the order and denied him admission to the facility.  <u>Id.</u>  They also failed to refer Anderson to another treatment

facility.  Id.  Thus, from April 3, 2009, through April 9, 2009, Anderson remained at Siskiyou County Jail.  Id.  While in custody, Sheriff's Department officials refused to provide Anderson with access to emergency medical and psychiatric care and treatment, and his condition continued to worsen.  Id.  Anderson committed suicide on April 9, 2009. Id. ¶ 21.  On June 1, 2009, the state court held Napa State Hospital and its Executive Director, Ed Foulk, in contempt of court for failing to admit Anderson to their facility, as ordered.  Id.

### B.   PROCEDURAL HISTORY

On April 5, 2010, Swezey, as personal representative of the estate of Anderson and as successor in interest to his claims, and on behalf of herself individually, commenced the instant action in this Court.  As Defendants, Plaintiff have named the County Defendants, i.e., the County of Siskiyou, its Sheriff's Department, Siskiyou County Sheriff Rick Riggens ("Riggens") and Deputy Christopher Miller ("Miller"), Captain James Bett ("Bett") and Dr. Robert Bortman ("Bortman"), all of whom allegedly were involved in denying Anderson the requisite treatment while in their custody.  In addition, Plaintiff has sued the State of California, Napa County State Hospital, Dr. Ed Foulk ("Foulk") and Dana White, R.N. ("White") (collectively, "State Defendants"), based on their refusal to provide treatment to Anderson, notwithstanding the superior court's order to do so.

The Complaint alleges eight claims for relief, as follows:  (1) deliberate indifference to serious medical needs, pursuant to 42 U.S.C. § 1983 (against Bett, Miller, Bortman, Foulk and White); (2) municipal liability under § 1983 (against County of Siskiyou and the Sheriff's Department); (3) supervisory liability under § 1983 (against Riggens, Bett and Foulk); (4) violation of the ADA, Rehabilitation Act and the California Unruh Act (against the State of California and Siskiyou County); (5) violation of California Government Code § 845.6 (against Bett, Miller, Bortman and Siskiyou County); (6) violation of Civil Code § 52.1 (against all Defendants); (7) negligence (against all Defendants); and (8) medical negligence (against Bortman, Siskiyou County and the Sheriff's Department).  State Defendants filed their Answer on July 1, 2010.  Docket 26.

1 County Defendants have now filed a motion to dismiss, pursuant to Federal Rule of

2 Civil Procedure 12(b)(6), as to certain of the claims alleged in the Complaint.  After filing

3 their motion, County Defendants met and conferred with Plaintiff regarding the issues

4 presented in the motion.  Defs.' Reply at 2-3.  As a result, Plaintiff agreed to amend certain

5 of her allegations and Defendants correspondingly withdrew some of the arguments

6 presented in their motion.  The Court therefore focuses its analysis on the remaining issues

7 presented by the parties' motion papers.[1]

8 **II.   <u>LEGAL STANDARD</u>**

9 A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the

10 lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal

11 claim.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff's

12 factual allegations "must be enough to raise a right to relief above the speculative level."

13 <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).  Those facts must be sufficient to

14 push the claims "across the line from conceivable to plausible[.]"  <u>Ashcroft v. Iqbal</u>, ---

15 U.S. ---, 129 S.Ct. 1937, 1951 (2009) (quoting <u>Twombly</u>, 550 U.S. at 557).  In deciding a

16 Rule 12(b)(6) motion, the court  "may generally consider only allegations contained in the

17 pleadings, exhibits attached to the complaint, and matters properly subject to judicial

18 notice[.]"  <u>Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold</u>

19 <u>and Easement in the Cloverly Subterranean, Geological Formation</u>, 524 F.3d 1090,

20 1096 (9th Cir. 2008).  The court is to "accept all factual allegations in the complaint as true

21 and construe the pleadings in the light most favorable to the nonmoving party." <u>Outdoor</u>

22 <u>Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899-900 (9th Cir. 2007).  If the

23 complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is

24 clear the complaint cannot be saved by amendment.  <u>See</u> <u>Sparling v. Daou</u>, 411 F.3d 1006,

25 1013 (9th Cir. 2005).

26

27 [1] While the Court lauds the parties' ostensibly cooperative efforts to narrow the issues, they should be aware of their obligation to meet and confer *prior to* filing any

28 motion in this Court.

III.   DISCUSSION

   A.   DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

   To establish a § 1983 claim, a plaintiff must prove: (1) that a defendant acted under color of state law; and (2) the conduct deprived the plaintiff of a right secured by the Constitution or laws of the United States.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).  Section 1983 is not itself a source of substantive rights, but a jurisdictional vehicle for vindicating federal rights elsewhere conferred.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2008) (citations omitted).

   Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain."  Id.  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).[2]

   In § 1983 actions, the survivor of an individual who died as a result of a constitutional violation may assert a § 1983 claim on the decedent's behalf if the relevant state's law authorizes a survival action.  42 U.S.C. § 1988(a); Tatum v. City & County of San Francisco, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006).  A survivor cause of action is a

---

   [2] Although pretrial detainees are protected by the due process clause of the Fourteenth Amendment, courts incorporate Eighth Amendment principles in evaluating detainees' claims of medical deprivations.  Conn v. City of Reno, 591 F.3d 1081, 1094 (9th Cir.2010). In this context, Eighth Amendment standards establish a minimum standard of care for pretrial detainees.  Id.  Although Plaintiff has alleged violations of both the eighth and fourteenth amendments, she now concedes that such claim is cognizable only under the fourteenth amendment.  The Court will therefore grant Plaintiff leave to amend to correct this error.

"cause of action which belonged to the decedent before death but, by statute, survives that event." <u>Quiroz v. Seventh Ave. Ctr.</u>, 140 Cal.App.4th 1256, 1264 (2006).  California law provides that a cause of action survives a person's death even when the loss or damage occurred simultaneously with the death of a person.  Cal.Code Civ. P. § 377.20.  Thus, a survival action based on Defendants' alleged violations of Anderson's constitutional rights may be brought by Anderson's personal representative or his successor in interest.  <u>Id.</u>[3]

Defendants do not dispute Swezey's right to bring a § 1983 survival action on behalf of Anderson, but argue, without citation to any legal authority, that the Complaint must be expressly plead as such.  Defs.' Reply at 4.  Since Defendants did not expressly raise this argument in their moving papers, it is not properly before the Court.  <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("[a] district court need not consider arguments raised for the first time in a reply brief.").  But even if it were, Defendants' argument is unpersuasive.  The Complaint alleges that Anderson's death resulted from the conduct of the Defendants, and that Swezey is therefore bringing the action as his successor in interest.  Compl. ¶ 3.  The only manner in which Swezey could allege a § 1983 claim, under the circumstances presented, is through a survival action.  Thus, to require Plaintiff to amend the pleadings to explicitly state that it is a survival action would elevate form over substance.  The Court agrees with Defendants, however, that upon amending their Complaint, Plaintiff should delineate which damages are being sought by Swezey in her individual capacity and in her capacity as a successor in interest.

---

[3] California Code of Civil Procedure § 377.30 provides that "[a] cause of action that survives the death of the person . . . may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  The term "'decedent's successor in interest,' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."  Cal.Civ.Proc.Code § 377.11.  Although the Complaint identifies Swezey as Anderson's "personal representative" and "successor in interest," the parties have agreed to permit Plaintiff to delete the reference to "personal representative."  Pls.' Opp'n at 1.

**B.    ADA/REHABILITATION ACTION**

Title II of the ADA and § 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Similarly, § 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.  Title II of the ADA and the Rehabilitation Act apply to inmates in prison and pretrial detainees held in county jail.  See Penn. Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (finding that state prisons are "public entities" for the purposes of Title II); Pierce v. County of Orange, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II applies to the Orange County jails' services, programs, and activities for detainees").

**1.    Rehabilitation Act**

To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) *the program receives federal financial assistance*."  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (emphasis added).  Defendants complain that "[Plaintiff's] Complaint does not contain an allegation that the Siskiyou County Jail receives any federal assistance . . . ." Defs.' Reply at 5.  However, Defendants ignore that the Complaint expressly alleges that the county jail is a place of "public accommodation and [is] a covered entity for purposes of enforcement of . . . the Rehabilitation Act . . . ." Compl. ¶ 56.  A "covered entity," by definition, is one that receives federal funds.  See Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 968 (N.D. Cal. 1998).  Thus, for pleading purposes, Plaintiff has sufficiently alleged that Defendants are subject to the requirements of the Rehabilitation Act.

2.    **ADA**

To state a claim under Title II of the ADA, the plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021-22 (9th Cir. 2010) (citation omitted).  "Under [ADA] regulations, a qualified individual with a disability (an individual for whom reasonable modifications may be required, 42 U.S.C. § 12131(2)) must not be excluded from or denied the benefits of a public entity's services, programs, or activities because the entity's facilities are inaccessible or unusable."  Id. (citing 28 C.F.R. § 35.149).

 "The ADA prohibits discrimination because of disability, not inadequate treatment for disability."  Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021-22 (9th Cir. 2010).  As such, the mere provision of inadequate medical care does not state a claim under the ADA.  Id. (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).  Here, Defendants contend that Plaintiff's claim for denial of access to services and programs is, in reality, simply a claim for denial of medical care.  Defs.' Mot. at 10-11.  The Court disagrees.  The Complaint expressly alleges that Defendants failed to provide Anderson with any access to mental health programs and services and failed to accommodate his mental disabilities.  Compl. ¶¶ 55, 62.  The ADA may be violated where there is an "outright denial of medical services" because the complete lack of access to services may be "so unreasonable as to demonstrate that they were discriminating against [plaintiff] because of his disability."  See Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 285 (1st Cir. 2006).  Thus, the Court finds that Plaintiff's allegations are sufficient to state a claim under the ADA.

C.    **UNRUH CIVIL RIGHT ACT**

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal

accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). The Unruh Act "firmly established the right of all persons to nondiscriminatory treatment by establishments that engage in business transactions with the public." Warfield v. Peninsula Golf & Country Club, 10 Cal.4th 594, 6189 (1995). The purpose of the Unruh Acts "is to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." Curran v. Mount Diablo Council of the Boy Scouts, 147 Cal.App.3d 712, 733 (1983).

The salient question presented is whether a county jail is a "business establishment" subject to the Unruh Act. There is a paucity of law addressing this issue. However, at least one California District Court has concluded that a prison does not qualify as a business entity. See Taormina v. Cal. Dept. of Corr., 946 F. Supp. 829, 834 (S.D. Cal. 1996). Citing the California Supreme Court's decision in O'Connor v. Village Green Owners Ass'n, 33 Cal.3d 790, 795 (1983), the Taormina court reasoned that in the context of the Unruh Act, the term "business" generally pertains to matters "synonymous with calling, occupation or trade, engaged in for the purpose of making a livelihood or gain." Id. A prison, the district court reasoned, "does not qualify as a 'business' because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain." Id. Rather, prisoners are in prison, not by choice, but "because of crimes which they have committed." Id.

Plaintiff ignores Taormina, and instead argues, without citation to any relevant authority, that because a claim under the Unruh Act may be predicated on a violation of the ADA, the Unruh Act must necessarily apply to prisons and jails as well. Pls.' Opp'n at 11. In particular, Plaintiff relies on California Civil Code § 51(f), which amended the Unruh Act in 1992 to provide that "a violation of the right of any individual under the [ADA] shall also constitute a violation" of the Unruh Act. Cal. Civ.Code § 51(f). However, in enacting § 51(f), the California Legislature did not purport incorporate the ADA in its entirety to the Unruh Act. See Bass v. County of Butte, 458 F.3d 978, 981 (9th Cir. 2006). Rather, the

  
legislature only intended to incorporate those provisions of the ADA germane to the *original scope of the Unruh Act*. Id.  The provision of the Unruh Act at issue here applies specifically to "business establishments."  Cal. Civ.Code § 51(b).  To conclude that a jail is governed by the Unruh Act, notwithstanding the fact that it lacks the attributes of a business, would amount to an impermissible expansion of the statute.[4]  Therefore, the Court concludes that Plaintiff has failed to state a claim under the Unruh Act.  Because, no amendment can cure this deficiency, Plaintiff's fourth claim, insofar as it is based on the Unruh Act, is dismissed without leave to amend.

### D.   DISABLED PERSONS ACT

Under the Disabled Persons Act ("DPA"),"[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to . . . places of public accommodation, amusement, or resort, and other *places to which the general public is invited* . . . ."  Cal. Civ.Code, § 54.1(a)(1) (emphasis added); id. § 54(a) ("Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, . . . public facilities, and *other public places*") (emphasis added).

The DPA only guarantees physical access to a facility, and therefore, has no application to this case.  In Turner v. Ass'n of Am. Med. Colleges, 167 Cal.App.4th 1401, 1412 (2008), individuals with learning disabilities alleged that defendants violated the DPA by requiring them to take a standardized test, without providing any accommodations for their disabilities.  In rejecting that claim, the court held that the DPA only guarantees physical access to a public facility.  Id.  The court concluded that "[n]othing in the language of section 54 can be reasonably construed to require a modification of the test procedures

---

[4] It bears noting that the cases regarding the applicability of the ADA to prisons and jails did so in the context of interpreting 42 U.S.C. § 12132, which applies specifically to "a public entity."  See Yeskey, 524 U.S. at 209 ("State prisons fall squarely within the statutory definition of 'public entity,' . . ."); accord Pierce, 526 F.3d at 1214.  Thus, to conclude that the Unruh Act encompasses jails simply because the ADA does would impermissibly render "business establishment" under the Unruh Act synonymous with "public entity" under the ADA.

themselves, except to the extent necessary to guarantee *physical access* to the place in which the test is administered."  Id. (emphasis added); accord Eller v. City of Santa Rosa, Case No. C 10-1094 TEH, 2009 WL 3517610, at *3-4 (N.D. Cal. Oct. 23, 2009) ("the weight of California authority goes against a reading of the DPA as protecting anything other than physical access for the disabled") (Henderson, J.).  Plaintiff's fourth claim is predicated upon the alleged denial of services, not the denial of access to a public facility.  Thus, to the extent that Plaintiff's fourth claim is based upon the DPA, such claim is dismissed without leave to amend.[5]

## IV.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      County Defendants' Motion to Dismiss (Docket 13) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Plaintiff's first claim to the extent that it is predicated on a violation of the eighth amendment, and fourth claim insofar as it is based on the Unruh Act and the DPA.  Said claims are DISMISSED WITHOUT LEAVE TO AMEND.  The motion is DENIED in all other respects.

2.       Plaintiff shall file her First Amended Complaint within five (5) days of the date this Order is filed, consistent with the parties' stipulation.  Defendants' responsive pleadings shall be filed in accordance with the Federal Rules of Civil Procedure.

---

[5] The Complaint does not appear to allege any claims based on this statute.  Though Anderson is alleged to be a "qualified individual" under, inter alia, Civil Code § 54, there are no allegations in Plaintiff's fourth claim that Defendants violated the DPA.  See Compl. ¶ 55.  In any event, even if Plaintiff had averred such a violation, the Court is persuaded by Defendants' contention that Plaintiff have failed to state a claim under § 54.

3.      The parties shall appear for a telephonic Case Management Conference on **October 20, 2010 at 3:30 p.m.**  Prior to the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement, which shall be filed no later than ten (10) days prior to the hearing.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: September 13, 2010                                    _____
                                                                              SAUNDRA BROWN ARMSTRONG
                                                                              United States District Judge